UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOYAL WEBBER,<br><br>        Plaintiff,<br><br>    v.<br><br>J. BARRIOS, *et al.*,<br><br>        Defendants. | Case No. 1:24-cv-00461-KES-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH A COURT ORDER<br><br>(ECF Nos. 1, 7 ).<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

      Plaintiff Doyal Webber is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 6). Plaintiff's complaint generally alleges that the guilty finding in a Rules Violation Report (RVR) was against the evidence because his cellmate took responsibility for the drugs that were found in his cell.

      On May 1, 2024, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 7). The Court gave Plaintiff thirty days to file an amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 11). And the Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.*).

      More than thirty days have passed, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order. Accordingly, for the reasons given below, the Court

will recommend that Plaintiff's case be dismissed with prejudice for failure to state a claim, failure to prosecute, and failure to comply with a court order.

I.       SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

\\\

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff states that the events in the complaint occurred at the Substance Abuse Treatment Facility and State Prison (SATF) located in Corcoran, California. In the section of the complaint designated for Defendants,[1] Plaintiff lists six SATF prison employees: (1) Lt. J. Barrios; (2) Lt. J. Ervin; (3) Associate Warden P. Liamas; (4) Warden B. Phillips; (5) Captain J. Sherman; and (6) ISU Sgt. L. Hornsby.

Plaintiff includes an introduction to his complaint where he describes attachments to his complaint. He states that he appealed "false claims" and "retaliatory acts by staff regarding distribution of drugs and placing drug charges upon plaintiff . . . when cellie accepted responsibility of drugs found in quarters." The attached exhibit includes a grievance document where Plaintiff complains that he was falsely accused of violating a prison rule because he was exercising his constitutional rights. (ECF No. 24, p. 11). The grievance describes an incident where Plaintiff's cell was searched, officers found drugs, and his cellmate took responsibility for them. However, Plaintiff complains that he was still found guilty of a RVR because he was deemed to have knowledge of the drugs in his cell.

Plaintiff also refers to attached RVR documents, which include "Disciplinary Hearing Results." This document states that Plaintiff was found guilty of distribution of controlled substance and contains the following narrative:

> The Rules Violation Report wherein the reporting employee's states in part: "On Thursday, July 13, 2023, at approximately 0630 hours, the Investigative Services Unit (ISU) conducted a search operation on Facility D. Specifically, a search of Inmates Doyal WEBBER, AB3963 and Christopher GRIMES, BJ6056 assigned housing was conducted (Facility D, Building 1, Cell 231). The search yielded positive results for the discovery of multiple bindles which subsequently tested positive for heroin, and marijuana. Specifically, at approximately 0630 hours, while performing my duties as ISU Officer #2, I conducted a systematic search of Facility D, Building 1, Cell 231, wherein during the search of the lower bunk, I discovered two (2) bindles of suspected controlled substance. Upon further inspection of Bindle #2B, I discovered it was composed of two (2) separate bindles. Hereafter, the discovered bindles will be referred to as Bindle #2B1 and #2B2. Moreover, Webber was presented with a Controlled Substance

---

[1] Minor alterations, such as altering punctuation and correcting misspellings, have been made to some of Plaintiff's quotations in the complaint without indicating each change.

> Identification Field Test Waiver, wherein he elected to accept the results of the field test."
>
> . . . .
>
> This SHO was presented with an affidavit by subject, written and signed by subject. In this affidavit, subject states his cell mate, inmate Grimes takes full responsibility for the discovered controlled substance. In addition, subject requested to take a polygraph examination to prove his not guilty. Per the California Code of Regulations, Title 15, Section 3293 (b), "Polygraph examinations shall not be used as an alternative to regulatory requirements for determining a person's guilt or innocence of charges in disciplinary matters."
>
> This SHO was presented with an affidavit by witness inmate Grimes written and signed by inmate Grimes. In this affidavit, inmate Grimes takes full responsibility for the discovered contraband and explains how the contraband landed on subject's bunk.

(ECF No. 1, p. 24).

Ultimately, Plaintiff was found guilty based on prison officers finding that he had knowledge of the contraband in his cell, despite his cellmate's statement.

Referencing the documents attached to his complaint, Plaintiff alleges that his First and Fourteenth Amendment rights were violated. His allegations against Defendants Barrios, Ervin, Liamas, Sherman, and Hornsby are nearly identical.[2]

> [These Defendants] were acting under color of state law by having knowledge and acquiescence and knew Plaintiff (Webber, Doyal) were innocent of Distribution of Controlled Substance and (1.) Knew of violation of Plaintiff's rights and (2.) Were in a position to "correct" them and (3.) Failed to intervene, even after (Grimes, Christopher) admitted to and excepted full responsibility for discovered contraband, (4.) Defendant[s] failed to intervene, and [are], held responsible for unconstitutional deprivation that Plaintiff was subjected to.

(*Id.* at 6-8).

As to Warden B. Phillips, Plaintiff states that he was an overseer who "failed to stop his subordinates from indulging in illegal acts in his presence of otherwise within his knowledge and demonstrated reckless indifference" to his constitutional rights.

As for relief, Plaintiff requests $2.7 million dollars.

---

[2] There are slight variations in Plaintiff's allegations in these Defendants. For example, he adds a statement in the allegations against Defendant Hornsby that Inmate Grimes purportedly stated, "Whatever contraband is found is mine. I'm going to take responsibility for it." However, none of the differences are material for purposes of screening.

4

III.    ANALYSIS OF PLAINTIFF'S COMPLAINT

A.    Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal,* 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B.  Challenge to RVR Guilty Finding**

Plaintiff's complaint generally challenges the RVR guilty finding against him, and claims that the persons responsible for the RVR violated his constitutional rights by supporting that guilty finding. In particular, he claims that the guilty finding is incorrect because his cellmate took full responsibility for the contraband found in their joint cell.

Plaintiff's guilty finding was the result of a prison disciplinary process. A prisoner retains his right to due process subject to the restrictions imposed by the nature of the penal system. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.*  *Wolff* established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." *Id.* Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." *Id.* at 570.

Additionally, "some evidence" must support the decision of the hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). The standard is not particularly stringent, and the relevant inquiry is "whether there is any evidence in the record that could support the conclusion reached . . . ." *Id.* at 455-56.

Here, Plaintiff does not challenge the procedure that resulted in a disciplinary finding against him. For example, Plaintiff does not allege that he failed to receive written notice of the disciplinary hearing, a period of time to prepare, the opportunity to present a defense, or a written statement of the evidence relied on and the reasons for the disciplinary action.

7

Therefore, the complaint does not allege that Plaintiff failed to receive due process in connection with the RVR.

Nor does Plaintiff's allegation that his cellmate accepted responsibility for the substances invalidate the guilty finding. As discussed above, this Court looks only to whether the disciplinary finding was supported by "some evidence." Here, even according to Plaintiff's complaint, drugs were found in his cell. That is some evidence of the charge against Plaintiff. While Plaintiff argues that his cellmate's statement should have convinced prison officials that Plaintiff himself was innocent, the presence of drugs in his cell is nevertheless some evidence that could support his guilty finding. That evidence is sufficient for this Court to uphold the RVR finding against him. Put another way, the guilty finding against Plaintiff did not violate his constitutional rights so long as he received procedural due process and there was some evidence supporting the finding. Plaintiff does not have a constitutional claim merely because he believes the evidence supports a different finding. *See Urmancheev v. Ndoh*, No. 1:21-CV-00255-JLT-HBK (PC), 2023 WL 8478024, at *4 (E.D. Cal. Dec. 7, 2023), *report and recommendation adopted*, 2024 WL 1660740 (E.D. Cal. Apr. 17, 2024) ("The FAC does not allege that there was no evidence in the record that could support Plaintiff's guilty finding, only that prison staff did not provide him physical evidence confirming the testing of the alcohol he allegedly possessed. This is insufficient to set forth a due process violation."); *Kohut v. Martin*, No. 1:22-CV-00472-HBK (PC), 2023 WL 8977215, at *7 (E.D. Cal. Dec. 28, 2023) ("The FAC does not allege that there was no evidence in the record that could support Plaintiff's guilty finding; indeed, Plaintiff admits that he struck and knocked down inmate Mills. (Doc. No. 13 at 4-5 ¶ 17, id. at 56). Rather the FAC asserts that Defendant May did not sufficiently weigh evidence that Plaintiff was not the aggressor and was acting in self-defense. This is insufficient to set forth a due process violation."); *Williams v. Farley*, No. CV 20-4490-PA (KK), 2021 WL 1307603, at *8 (C.D. Cal. Apr. 2, 2021), *report and recommendation adopted*, 2021 WL 1299190 (C.D. Cal. Apr. 6, 2021) (rejecting Plaintiff's argument that RVR was based on unreliable testimony and finding some evidence to support the RVR).

Plaintiff's allegations that Defendants were aware that he was innocent—presumably because his cellmate took responsibility for the drugs found in their cell—and yet failed to intervene in his being found guilty of the false RVR also do not raise a claim for violation of Plaintiff's constitutional rights. "[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983." *Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), *aff'd*, 453 Fed. App'x 751 (9th Cir. 2011) (citations omitted); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal., June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

Moreover, while Plaintiff briefly refers to "retaliatory acts," this statement alone does not state a constitutional claim for retaliation. There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). To prove the second element – retaliatory motive – plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff's allegations do not establish such a claim.  Plaintiff does not state what protected conduct he engaged in, how Defendants took some adverse action in response to that protected conduct, or how such action chilled Plaintiff's exercise of constitutional rights. Therefore, the complaint does not state a claim for retaliation under the First Amendment.

And as to Warden B. Phillips, Plaintiff fails to specifically allege what constitutional

violations he knew of and failed to prevent in his role as a supervisor of Defendants. Rather, he merely alleges that failed to stop his subordinates from indulging in illegal actions, which is insufficient to impose liability on Warden B. Phillips.

Finally, because the RVR resulted in lost credits, it is possible that a finding in Plaintiff's favor may affect the length of his sentence, which would make the claim not cognizable under § 1983.[3]

For these reasons, Plaintiff's allegations do not state a cognizable claim for violation of his constitutional rights.

## IV.   FAILURE TO PROSECUTE AND COMPLY WITH A COURT ORDER

The Court will likewise recommend dismissal based on Plaintiff's failure to prosecute this case and to comply with a court order.

> In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

---

[3] Any challenge to a disciplinary hearing can only proceed in this § 1983 case if success on Plaintiff's claim would *not* necessarily lead to his immediate or earlier release from confinement. Challenges to disciplinary proceedings that result in the loss of good time credits, and necessarily affect the duration of an inmate's sentence, must be filed as a writ of habeas corpus (subject to exhaustion and other requirements for such petitions), rather than a § 1983 action. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1987) (§ 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction of loss of good-time credits); *cf. Ramirez v. Galaza*, 334 F.3d 850, 858 (9th. Cir. 2003) (holding that the favorable termination rule of *Heck* and *Edwards* does not apply to challenges to prison disciplinary hearings where the administrative sanction imposed *does not* affect the overall length of confinement and, thus, does not go to the heart of habeas); *see also Wilkerson v. Wheeler*, 772 F.3d 834 (9th Cir. 2014) (discussing loss of good-time credits); *Nettles v. Grounds*, 830 F.3d 922, 934–35 (9th Cir. 2016) (discussing the impact of a prison disciplinary violations in determining suitability for parole). Here, it appears that Plaintiff lost good time credits as a result of the RVR finding. A loss of good time credits might not affect the duration of Plaintiff's sentence if he was facing an indeterminate sentence of life without possibility of parole, but there are no indications this is the case.

"'The public's interest in expeditious resolution of litigation always favors dismissal.'" *Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Accordingly, this first factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest. . . . It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants. . . ." *Id.* Despite being given ample time, Plaintiff has failed to respond to the Court's screening order or filing anything at all since this case was screened. This failure to respond and prosecute is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, given that Plaintiff has chosen not to prosecute this action and has failed to comply with the Court's order, despite being warned of possible dismissal, there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's incarcerated and *in forma pauperis* status, it appears that monetary sanctions are of little use. And given the stage of these proceedings, the preclusion of evidence or witnesses is not available. Therefore, the fourth factor weighs in favor of dismissal.

Finally, because public policy favors disposition on the merits, this factor weighs against dismissal. *Id.*

After weighing the factors, the Court finds that dismissal is appropriate.

## V.     CONCLUSION AND RECOMMENDATIONS

Based on the forgoing, IT IS RECOMMENDED as follows:

11

1. This action be dismissed with prejudice for failure to state a claim, failure to prosecute, and failure to comply with a court order; and

4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 18, 2024**            /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE